UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PIERRE MARTIN MURPHY,

        Plaintiff,                Case No. 1:12-cv-13

v.                                      Honorable Janet T. Neff

B. ROZEN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed.

**Factual Allegations**

Plaintiff Pierre Martin Murphy is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan. He sues the following employees of IBC: Assistant Resident Unit Supervisor B. Rozen; Assistant Deputy Warden S. Young; and Resident Unit Manager (unknown) Hull.

Plaintiff alleges that on December 22, 2011, a "personal health matter" was written on his "S.C.C. Review." (Compl. 3, docket #1.) He contends that this information should have remained confidential, but instead Defendants Rozen, Hull, and Young "intentionally put it on this paper" where others would know about it. (*Id.*) Because prison officers and other prisoners are now aware of Plaintiff's "illness," he has experienced "pain and suffering," "fear," and "stress." (*Id.* at 3-4.) He asserts that Defendants violated his rights with "intent to hurt" him. (*Id.* at 3.) As relief, Plaintiff seeks $1.5 million in damages.

**Discussion**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct.

at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

      I.    <u>Failure to state a claim.</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **A.**    **State law (prison policies)**

Plaintiff does not identify a federal right supporting his § 1983 claim.  Instead, he cites two MDOC Policy Directives, 03.03.130 ("Humane Treatment and Living Conditions for Prisoners"), and 03.04.120 ("Control of Communicable Bloodborne Diseases"), thereby implying that Defendants violated these policies.  An alleged failure to comply with an administrative rule or prison policy does not itself give rise to a § 1983 claim, however.  *See Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("[A] § 1983 claim may not be based upon a violation of state procedure

that does not violate federal law."); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Thus, Plaintiff does not state a § 1983 claim merely because Defendants violated MDOC policy directives.

### B.     Fourteenth Amendment

Construing the complaint generously, Plaintiff's allegation that Defendants disclosed his medical information arguably implicates his right to privacy under the Fourteenth Amendment. The Sixth Circuit recognizes a right to informational privacy under the Fourteenth Amendment, but unlike other circuits, "'[it] has developed and applied a different approach to assessing informational privacy claims' that 'requires that the asserted privacy interest implicate a fundamental right.'" *Lee v. City of Columbus*, 636 F.3d 245, 259 (6th Cir. 2011) (quoting *Lambert v. Hartman*, 517 F.3d 433, 442 (6th Cir. 2008)). The court has repeatedly rejected the notion that a person has a general constitutional right to non-disclosure of private information. *Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2008); *see, e.g., Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455–57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *J.P. v.*

*DeSanti*, 653 F.2d 1080, 1091 (6th Cir. 1981) (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various agencies). A plaintiff alleging a violation of his right to informational privacy must demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (quoting *DeSanti*, 653 F.2d at 1090). Only after a fundamental right is identified should the court proceed to the next step of the analysis—the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998). Applying these standards, the Sixth Circuit has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, *see Kallstrom*, 136 F.3d at 1061; and (2) where the information released was of a sexual, personal, and humiliating nature, *see Bloch*, 156 F.3d at 684. *Lambert*, 517 F.3d at 440.

With respect to disclosure of medical information, the Sixth Circuit recently stated that it has "not yet confronted circumstances . . . that, in [its] view, are tantamount to a breach of a 'fundamental liberty interest' under the Constitution." *Lee*, 636 F.3d at 261. In *Lee*, the court considered a policy requiring city employees to disclose the nature of their illness after taking sick leave. *Id.* at 248. The Court upheld the policy, noting that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id.* at 261. Likewise, Plaintiff does not allege that the disclosure of his medical information subjected him to a risk of harm, as in *Kallstrom*, nor does he allege that the information disclosed was of a sexual or intimate nature, as in *Bloch*.

In a case involving prisoner medical information, the Sixth Circuit held that an inmate's constitutional right to privacy was not violated when a prison corrections officer learned from the inmate's medical records that he was HIV positive.[1] *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994). *But see Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (distinguishing *Wigginton* and holding that an inmate had a constitutional privacy interest in guarding against disclosure of his HIV-positive status *to other inmates*, subject to legitimate penological interests).[2] The holding in *Wigginton* applies with equal force to Plaintiff's case. Plaintiff complains he has experienced stress, fear, and pain and suffering, but he fails to indicate why or how the disclosure had this impact. As *Wigginton*, *Lee,* and the other cases cited, *supra*, demonstrate, the disclosure of Plaintiff's medical information does not rise to a constitutional dimension merely because he would prefer to keep that information private. To state a Fourteenth Amendment claim, he must allege facts indicating that Defendants' conduct implicated a fundamental right. Because there are no such facts alleged in Plaintiff's complaint, he fails to state a Fourteenth Amendment claim.[3]

### C. Eighth Amendment

Plaintiff also alleges that Defendants intended to hurt him, which raises a possible claim under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous"

---

[1]As noted, Plaintiff cites an MDOC policy regarding control of communicable bloodborne diseases, including Hepatitis and HIV. *See* MDOC Policy Directive 03.04.120. If Plaintiff suffers from such an illness, then *Wigginton* is all the more applicable to his claim.

[2]The holding in *Moore* is questionable. The majority opinion is not supported by Sixth Circuit precedent, it does not expressly apply fundamental-rights analysis, and it does not explain why the disclosure of an inmate's HIV status to another inmate implicates a fundamental right (while the disclosure of the same information to a prison official, as in *Wigginton*, does not). *See Moore*, 379 F. App'x at 429 (Kethledge, J., dissenting).

[3]To the extent *Moore* would suggest a different result, that opinion is not binding on this Court, because it is unpublished, and it is not persuasive, for the reasons indicated in note 2, *supra*.

nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is generally concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Thus, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff does not allege that Defendants deprived him of a minimum civilized measure of life's necessities or subjected him to a serious risk to his health or safety. Plaintiff's vague allegations of pain and suffering are not sufficient to state an Eighth Amendment claim.

II.     Supplemental jurisdiction.

To the extent Plaintiff asserts claims arising under state law, the Court has discretion to retain supplemental jurisdiction over them. In determining whether to retain such jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v.*

*Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*.  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866-67 (2009), *cited in Orton v. Johnny's Lunch Franchise, LLC*, No. 10-2044, slip op. at 10 (6th Cir. Feb. 21, 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims, if any, will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), and his state law claims, if any, will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  April 5, 2012                         /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge